# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

VASTIAL LINDER,                      )
                                     )
    Plaintiff,              )
                                     )          CIVIL ACTION
v.                                   )
                                     )          FILE NO.
PLIVA, INC.; BARR                    )
PHARMACEUTICALS, INC.;               )
WYETH, INC. d/b/a WYETH; and         )
SCHWARZ PHARMA, INC.,                )
                                     )
    Defendants.             )
_____)

## COMPLAINT FOR DAMAGES

COMES NOW, VASTIAL LINDER, Plaintiff in the above-entitled action, by and through the undersigned attorneys, and files this Complaint for Damages against the above-named Defendants and shows the Court the following.

## PARTIES, JURISDICTION, AND VENUE

Plaintiff, over the age of majority, is a citizen and resident of the State of Georgia.  Plaintiff brings this action for the purpose of recovering all damages allowed by law for personal injuries suffered as a result of ingesting Reglan, metoclopramide,  and metoclopramide HCI (hereinafter "Reglan" intended to include the brand name and/or its generics), a prescription drug.

2.

Defendant, PLIVA, INC. (hereinafter "PLIVA"), is a New York corporation with its principal place of business in New Jersey, and is a subsidiary or division of PLIVA d.d., a corporation organized, existing, and doing business under and by virtue of the laws of the Republic of Croatia, headquarter in Zagreb, Croatia. At all times material hereto, PLIVA was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, metoclopramide tablets in the State of Georgia and in interstate commerce. PLIVA may be served with process through its agent for service of process, The Corporation Trust Company, located at 820 Bear Tavern Road, 3rd Floor, West Trenton, New Jersey 08628. PLIVA, INC. is subject to the jurisdiction and venue of this Court.

3.

Defendant, BARR PHARMACEUTICALS, INC. (hereinafter "BARR"), is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its headquarters address at 400 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. BARR is the successor-in-interest to PLIVA, d.d. References in this Complaint to PLIVA include Pliva, USA and Pliva, d.d., individually, and Barr Pharmaceuticals as

successor-in-interest to Pliva, d.d. BARR may be served with process through its agent for service of process, Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington, DE 19808. BARR PHARMACEUTICALS, INC. is subject to the jurisdiction and venue of this Court.

4.

Defendant, WYETH, INC. d/b/a (hereinafter "Wyeth") is a Delaware corporation with its principal place of business at 5 Giralda Farms, Madison, New Jersey 07940, and is the successor-in-interest to A.H. Robins Company, Inc., a Virginia corporation which first obtained approval by the Food and Drug Administration to distribute metoclopramide, under the brand name of Reglan, in the United States. Until December 27, 2001, Wyeth manufactured and distributed Reglan through its Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania. Metoclopramide is the active ingredient of Reglan. WYETH also manufactures and distributes generic metoclopramide through its ownership of ESILEDERLE, INC. (hereinafter referred to as "ESI"), which was formerly a subsidiary of WYETH and was merged into WYETH on December 15, 1998. On December 27, 2001, WYETH sold the rights and liabilities associated with Reglan tablets and Reglan syrup to Schwarz Pharma, Inc., a Delaware corporation with its principal place of business in

Wisconsin.  References in this Complaint to Wyeth include both WYETH, INC. individually and as successor-in-interest to A.H. ROBINS, INC., AMERICAN HOME PRODUCTS CORPORATION, and ESI.  At all times material hereto, Wyeth was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor-in-interest, or other related entities, metoclopramide tablets in the State of Georgia and in interstate commerce.  Wyeth may be served with process through its registered agent, The Prentice Hall Corp. System, 40 Technology Parkway South, #300, Norcross, Georgia 30092.  Wyeth, Inc. is subject to the jurisdiction and venue of this Court.

5.

Defendant, SCHWARZ PHARMA, INC. (hereinafter "Schwarz") is a Delaware corporation with its principal place of business in Mequon, Wisconsin.  On December 27, 2001, Schwarz purchased the rights and liabilities associated with metoclopramide tablets from Defendant Wyeth pursuant to an Asset Purchase Agreement, executed on that date, which obligated it to be responsible for claims relating to or arising out of the ingestion or use of metoclopramide from and after March 31, 2002, subject to a right to indemnification by Wyeth up to an amount not presently known by

Plaintiffs.  Plaintiffs are informed and believe that at all times relevant to this lawsuit, Defendant Schwarz and/or one of its predecessors-in-interest and/or one of its family of wholly owned divisions was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor-in-interest, or other related entities, metoclopramide tablets in the State of Georgia and in interstate commerce.  Schwarz may be served with process through its registered agent, CSC Entity Services, LLC, 103 Foulk Road, Suite 200, Wilmington, Delaware 19803.  Schwarz Pharma, Inc. is subject to the jurisdiction and venue of this Court.

6.

All Defendants, identified *supra*, inclusive, and each of them, may be referred to in this complaint collectively as the 'DRUG COMPANY DEFENDANTS."

7.

At all times relevant hereto, the DRUG COMPANY DEFENDANTS were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising the

pharmaceutical drugs known as Reglan, metoclopramide HCI and/or metoclopramide in the State of Georgia and in interstate commerce.

## FACTUAL ALLEGATIONS

8.

During all material times, Plaintiff has been a resident of the State of Georgia.

9.

On or about July 14, 2008, Plaintiff's physician prescribed Reglan at a dosage of 10mg., to be taken two times a day, in order to treat Plaintiff's gastrointestinal condition.

10.

Plaintiff's pharmacy filled Plaintiff's prescription with Reglan and/or the generic metoclopramide.

11.

Plaintiff ingested Reglan as prescribed until on or about March 3, 2010.

12.

The active ingredient, metoclopramide and/or metoclopramide HCI, is a dopamine antagonist.

13.

Upon information and belief, in prescribing the Reglan, metoclopramide, and/or metoclopramide HCI drugs to Plaintiff on a long-term basis, Plaintiff's physicians relied upon information published in the package inserts and/or the Physician's Desk Reference (hereinafter "PDR") or otherwise disseminated by the Reference Listed Drug Company (hereinafter RLD") and/or the New Drug Application Holder (hereinafter "NDA holder"), in particular, that information which had been disseminated by Defendants Wyeth and Schwarz.

14.

In particular, the false, misleading, and materially incomplete information included:

14.1 Boiler plate and conventional cautionary statements about the causal relationship between the use of Metroclopromide and dystonic reactions including Tardive Dyskensia such that no meaningful information was conveyed;

14.2 Inaccurate and incomplete information concerning dystonic symptoms such that physician prescribers were misled about their nature and degree;

14.3 A representation that dystonia (and all related maladies) occur hundreds of times less frequently with long term use then what was then known by the Defendants such that prescribing physicians are mislead about the frequency of the associated disease;

14.4   A complete lack of information concerning the then available data of complications and injuries that can arise from long term use of the medication;

14.5   A failure to provide a comparison between the frequency and severity of long and short term complications or injuries that can arise from the use of the medication.

15.

Plaintiff's physician was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the PDR.

16.

Plaintiff's long term ingestion of Reglan, metoclopramide and/or metoclopramide HCI resulted in overexposure to the drugs Reglan, metoclopramide, and/or metoclopramide HCI which caused Plaintiff to suffer serious, permanent and disabling neurological injuries, including but not limited to injuries of or associated with the central nervous and extrapyramidal motor systems.

17.

Because of the injuries Plaintiff suffered from the use of Reglan, metoclopramide HCI and/or metoclopramide, Plaintiff has experienced and will continue to experience medical and related expenses, loss of ability to

provide household services, disfigurement, disability, pain and suffering, psychological injury and other injuries and damages.

18.

Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendant Wyeth and Defendant Schwarz (as the Reference Listed Drug and or New Drug Applicant holder) and Defendant Pliva (the abbreviated New Drug Applicant holder) disseminating inaccurate, misleading, materially incomplete, false, and otherwise inadequate information concerning the potential effects of exposure to Reglan, metoclopramide, and/or metoclopramide HCI and the ingestion of Reglan, metoclopramide, and/or metoclopramide HCI drug to the medical community, physicians, Plaintiff's physician, Plaintiff and other foreseeable users of the drugs.

19.

Reglan, metoclopramide HCI and/or metoclopramide was not approved by the United States Food and Drug Administration for long-term use.

20.

Because of the misleading information that the DRUG COMPANY DEFENDANTS provided to physicians and the FDA about the true risks associated with the use of Reglan, metoclopramide HCI and/or

metoclopramide and because of the failure of the DRUG COMPANY DEFENDANTS and each of them to adequately inform physicians generally, including Plaintiff's physicians, about the true risks associated with the use of Reglan, metoclopramide HCI and/or metoclopramide, at all times relevant to this lawsuit, while Plaintiff was taking Reglan, metoclopramide HCI, and/or metoclopramide, Plaintiff's physicians never informed her of any side effects associated with Reglan, metoclopramide HCI, metoclopramide or that Reglan, metoclopramide HCI and/or metoclopramide was only approved for short term use (up to 12 weeks).

21.

At all times material hereto, Defendant Wyeth, individually and as successor-in-interest to A.H. Robins Company, was aware of the serious side effects caused by Reglan, metoclopramide HCI and/or metoclopramide including, but not limited to, central nervous system disorders, depression with suicidal ideation, akathisia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

22.

Wyeth is the successor-in-interest to A.H. Robins Company, Inc., which first obtained approval by the United States Food and Drug Administration (hereafter "FDA") to distribute metoclopramide, under the

brand name "Reglan" under the FDA's New Drug Application (NDA)[1]
schema.

23.

Under the FDA schema, Wyeth was/is the Reference Listed Drug
Company (RLD), under a specific NDA, for Reglan, metoclopramide and
metoclopramide HCI.

24.

Under the FDA schema, Wyeth knew, as an NDA applicant, that it
must fully, truthfully and accurately disclose to the FDA data and information
regarding a new drug's chemistry, proposed manufacturing process, proposed
model labeling which includes warnings about risks and side effects, test
results for the drug, results of animal studies, results of clinical studies and the
drug's bioavailability, because the data and information would be relied upon
by the medical community, physicians, Plaintiff's physician, Plaintiff and
other like foreseeable users of Reglan, metoclopramide and metoclopramide
HCI once the NDA was approved and Wyeth was listed as the Reference
Listed Drug Company for Reglan, metoclopramide and metoclopramide HCI.

---

[1] Upon information and belief, Plaintiff believes Wyeth to be the holder of multiple
NDAs for Reglan, metoclopramide and metoclopramide HCI.

25.

Wyeth failed to fully, truthfully, and accurately disclose Reglan, metoclopramide, and metoclopramide HCI data to the FDA, and as a result intentionally and fraudulently misled the medical community, physicians, Plaintiff's physician, and Plaintiff about the risks associated with long term use of metoclopramide.

26.

Under the FDA schema, as the Referenced Listed Drug Company for Reglan, metoclopramide, and metoclopramide HCI, Wyeth has a duty to ensure its warnings to the medical community are accurate and adequate; has a duty to conduct safety surveillance of adverse events for the drug and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

27.

Wyeth knowingly, intentionally and negligently disseminated misleading information to physicians across the country through a publication known as the *Physicians' Desk Reference*, labeling information for Reglan, metoclopramide and metoclopramide HCI which mislead the medical community, physicians and specifically Plaintiff's physician and Plaintiff

about the risks of long term ingestion of the drug including the increased risk of extrapyramidian side effects and Tardive Dystonia.

28.

At all times material hereto, Wyeth, Schwarz and Pliva, knew or should have known that most physicians were not aware of or did not fully appreciate the seriousness of the risks associated with use of Reglan, metoclopramide HCl and/or metoclopramide and that consequently there was a widespread tendency for physicians to prescribe Reglan, metoclopramide HCl and/or metoclopramide for inappropriate long-term use. Therefore, Wyeth, Schwarz and Pliva knew or should have known that the package insert and the Physician Desk Reference monograph for Reglan, metoclopramide HCl and/or metoclopramide did not adequately inform physicians about the risks associated with Reglan, metoclopramide HCl and/or metoclopramide, particularly for patients whose bodies do not metabolize Reglan and/or metoclopramide effectively.

29.

Wyeth, Schwarz and Pliva had access to and knew that severe side effects would result from the use of Reglan / metoclopramide in the manner in which physicians were prescribing Reglan, metoclopramide HCl and/or metoclopramide and the fact that physicians did not fully understand the risks

associated with Reglan, metoclopramide HCl and/or metoclopramide through the defendants participation, individually and jointly, in or its ability to review data from clinical studies that were not publicly available, through its review of domestic and international medical literature concerning Reglan/ metoclopramide and through ongoing litigation.

30.

Wyeth failed to adequately warn physicians about the risks associated with Reglan, metoclopramide HCl and/or metoclopramide despite the fact that Wyeth knew that physicians, the medical community, the generic pharmaceutical industry, Plaintiff and others similarly situated relied on Wyeth to disclose what it knew and what it should have known from a prudent review of the information that it possessed or to which it had access.

31.

Defendant Wyeth's predecessor-in-interest, A.H. Robins Company, Inc. expressly warranted to some physicians that Reglan, metoclopramide HCl and/or metoclopramide is safe in long-term use.  When A.H. Robins made those representations, A.H. Robins knew that those physicians would share that information with other physicians in their community and that eventually many physicians would come to rely on A.H. Robins' express warranties about Reglan, metoclopramide HCl and/or metoclopramide's safety in long-

term use.   A.H. Robins' express warranties about the safety of Reglan, metoclopramide HCI and/or metoclopramide in long-term use were false.

32.

Defendant Wyeth knew, or should have known through the exercise of reasonable care, that the package insert for Reglan, metoclopramide HCI and/or metoclopramide substantially understated the prevalence of acute and long term side effects of Reglan, metoclopramide HCI and/or metoclopramide.

33.

Wyeth failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short term use and long term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

34.

Defendant Wyeth and its predecessors-in-interest had actual knowledge, through their own studies and studies by independent investigators, that doctors frequently prescribed Reglan, metoclopramide HCI and metoclopramide for long term use that was not safe for patients.

35.

Defendant Wyeth and its predecessors-in-interest had actual knowledge, through their own studies and studies by independent investigators, that nearly one-third of all patients who used Reglan, metoclopramide HCI and/or metoclopramide received it on doctors' prescriptions for 12 months or longer, rather than 12 weeks or less.

36.

Defendant Wyeth also had actual knowledge, through research by independent investigators, that the risk of tardive dystonia and other extrapyramidal side effects of Reglan, metoclopramide HCI and/or metoclopramide in patients who receive the drug for long term use is approximately 100 times greater than disclosed in Wyeth's package insert for Reglan and the Physicians Desk Reference monograph for Reglan brand metoclopramide.

37.

Defendant Wyeth also knew, or through the exercise of reasonable care should have known, that many patients who use Reglan, metoclopramide HCI and/or metoclopramide are not able to effectively metabolize Reglan, metoclopramide HCI and/or metoclopramide and that as a foreseeable consequence of their inability to effectively metabolize Reglan,

metoclopramide HCl and/or metoclopramide, those patients have a greater risk of developing serious and permanent injuries.

38.

Defendant Wyeth failed to disclose the information recited above to the generic pharmaceutical industry.

39.

Defendant Wyeth was aware that its failure to disclose this information to the medical community and its failure to disclose it to the generic pharmaceutical industry would probably result in serious injury to patients who were prescribed Reglan, metoclopramide HCl and/or metoclopramide by a physician who was not aware of this information.

40.

By failing to disclose this information to the medical community and the generic pharmaceutical industry, Defendant Wyeth acted in willful and wanton disregard of the rights of persons in the Plaintiff's class, and this conduct caused serious injury to the Plaintiff.

41.

On or about December 27, 2001, Defendant Schwarz became entitled to access to all of the information and knowledge then possessed by Defendant

Wyeth concerning Reglan/metoclopramide, as more particularly alleged above.

42.

Defendant Schwarz purchased from Wyeth the rights and liabilities associated with Reglan, metoclopramide and metoclopramide HCI tablets, upon information and belief, the terms of which obligated Defendant Schwarz to be responsible for claims related to the ingestion or use of Reglan, metoclopramide and metoclopramide HCI, subject to a right of indemnification from Wyeth up to a certain dollar amount.

43.

Wyeth reviewed the article written by Joseph Jankovic and published in 1989 in the *Archives of Internal Medicine* entitled "Metoclopramide-Induced Movement Disorders: A Review of the Literature".

44.

Wyeth reviewed the article written by Dr. Ronald Stewart and published in 1992 in the *Annals of Pharmacology* entitled "An Analysis of Inappropriate Long-Term Use in the Elderly".

45.

Wyeth reviewed the epidemiological study written by Linda Ganzini and published in June of 1993 in the *Archives of Internal Medicine*.

46.

Wyeth reviewed the epidemiological study published and written by Dr. Daniel Sewell in 1994 concerning the frequency of Tardive Dyskinesia in metoclopramide treated patients.

47.

Wyeth reviewed the medical literature written by Yassa & Jeste in 1992 concerning the prevalence of Tardive Dyskinesia and Tardive Dystonia in patients exposed to long term neuroleptic drugs.

48.

Schwarz reviewed the article written by Joseph Jankovic and published in 1989 in the *Archives of Internal Medicine* entitled "Metoclopramide-Induced Movement Disorders: A Review of the Literature".

49.

Schwarz reviewed the article written by Dr. Ronald Stewart and published in 1992 in the *Annals of Pharmacology* entitled "An Analysis of Inappropriate Long-Term Use in the Elderly".

50.

Schwarz reviewed the epidemiological study written by Linda Ganzini and published in June of 1993 in the *Archives of Internal Medicine*.

51.

Schwarz reviewed the epidemiological study published and written by Dr. Daniel Sewell in 1994 concerning the frequency of Tardive Dyskinesia in metoclopramide treated patients.

52.

Schwarz reviewed the medical literature written by Yassa & Jeste in 1992 concerning the prevalence of Tardive Dyskinesia and Tardive Dystonia in patients exposed to long term neuroleptic drugs.

53.

Under the FDA schema, as the Referenced Listed Drug Company for Reglan, metoclopramide, and metoclopramide HCl, Schwarz has a duty to ensure its warnings to the medical community are accurate and adequate; has a duty to conduct safety surveillance of adverse events for the drug, and a duty to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

54.

Schwarz manufactured, marketed and distributed Reglan, metoclopramide, and/or metoclopramide HCl at all relevant material times herein.

55.

Wyeth breached its duty to the medical community, Plaintiff's physicians, Plaintiff and other foreseeable users similarly situated, in that it failed to ensure Reglan, metoclopramide and metoclopramide HCI warnings to the medical community, physicians, Plaintiff's physician and Plaintiff were accurate and adequate.

56.

Wyeth breached its duty to the medical community, to Plaintiff's physicians, Plaintiff, and other foreseeable users similarly situated, in that it failed to conduct post market safety surveillance and failed to report any significant data regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCI.

57.

Wyeth breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, because it failed to review all adverse drug event information (ADE), [2] and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused

---

[2] *See* 21 C.F.R. § 317.80(b).

by Reglan, metoclopramide or metoclopramide HCl, to the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

58.

Wyeth breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, in that it failed to periodically review all medical literature regarding Reglan, metoclopramide, and metoclopramide HCl, and failed to report data, *regardless of the degree of significance,* regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide and metoclopramide HCl.

59.

Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff and other foreseeable users similarly situated, because it failed to ensure Reglan, metoclopramide, and metoclopramide HCl warnings to the medical community were accurate and adequate.

60.

Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff and other foreseeable users similarly situated, because it failed to conduct post market safety surveillance and failed to report any

significant data regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCl.

61.

Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, because it failed to review all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan, metoclopramide, or metoclopramide HCl to the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

62.

Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to periodically review all medical literature and failed to report any significant data concerning neurological adverse effects, *regardless of the degree of significance,* regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCl.

63.

Defendant PLIVA submitted an Abbreviated New Drug Application to the U.S. Food and Drug Administration, based on representations made by the RLD Company, requesting permission to manufacture, market, and distribute metoclopramide and/or metoclopramide HCI.

64.

Under the ANDA process, the Code of Federal Regulations required Defendant PLIVA to submit a label for metoclopramide and metoclopramide HCI, initially identical in all material aspects to the reference listed drug label.

65.

Defendant PLIVA began selling generic metoclopramide and/or metoclopramide HCI in 1988.

66.

PLIVA did not investigate the accuracy of its metoclopramide and/or metoclopramide HCI drug label.

67.

PLIVA did not review the medical literature for the metoclopramide drug.

68.

PLIVA did not review the medical literature for the metoclopramide and/or metoclopramide HCl drug.

69.

PLIVA is under a duty to ensure that its metoclopramide label is accurate.

70.

PLIVA did not review the article published in 1989 in the *Archives of Internal Medicine,* written by Joseph Jankovic, entitled "Metoclopramide-Induced Movement Disorders: A Review of the Literature".

71.

PLIVA did not review the article written by Dr. Ronald Stewart and published in 1992 in the *Annals of Pharmacology* entitled "An Analysis of Inappropriate Long-Term Use in the Elderly".

72.

PLIVA did not review the epidemiological study written by Linda Ganzini and published in June of 1993 in the *Archives of Internal Medicine.*

73.

PLIVA did not review the epidemiological study written and published by Dr. Daniel Sewell in 1994 regarding the frequency of Tardive Dyskinesia and Tardive Dystonia in metoclopramide treated patients.

74.

PLIVA did not review the medical literature written by Yassa & Jeste in 1992 concerning the prevalence of Tardive Dyskinesia and Tardive Dystonia in patients exposed to long term neuroleptic drugs.

75.

PLIVA relied upon the name brand manufacturer to review the aforementioned medical literature for the metoclopramide drug.

76.

PLIVA relied upon the Reference Listed Drug company for the reference listed metoclopramide drug to review the aforementioned medical literature.

77.

Under the code of Federal Regulations, Defendant PLIVA, as an ANDA holder, has a duty to ensure its Reglan, metoclopramide, and metoclopramide HCl warnings to the medical community are accurate and adequate; has a duty to conduct post market safety surveillance; has a duty to

review all adverse drug event information (ADE) and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan, metoclopramide, or metoclopramide HCI, the medical community, Plaintiff's physician, Plaintiff and other foreseeable users.

78.

Under the Code of Federal Regulations, if Defendant PLIVA, as the ANDA holder, discovers information in the course of the fulfillment of its duties as outlined above, Defendant PLIVA must report that information to the medical community, Plaintiff's physician, Plaintiff and other foreseeable users of Reglan, metoclopramide and metoclopramide HCI to ensure that its warnings are continually accurate and adequate.

79.

PLIVA broached its duty to the medical community, Plaintiff's Physician, Plaintiff, and other foreseeable users similarly situated because it failed to ensure Reglan, metoclopramide, and/or metoclopramide HCI warnings to the medical community, Plaintiff's physician, Plaintiff, other foreseeable users similarly situated were accurate and adequate.

80.

PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it

failed to conduct post market safety surveillance of Reglan, metoclopramide, and/or metoclopramide HCI, and failed to report any significant data regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCI.

81.

PLIVA beached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to review all adverse drug events information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan, metoclopramide and metoclopramide HCI, the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

82.

PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to periodically review all medical literature and failed to report any significant data concerning neurological side effects, *regardless of the degree of significance,* regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCI.

83.

PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to report to the FDA *any* data (medical literature) concerning the risk and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing the active ingredient metoclopramide and/or metoclopramide HCI.

84.

Despite its knowledge, assuming it was transmitted to Schwarz by Wyeth as contemplated in the Asset Purchase Agreement, Schwarz failed to disclose this information to the medical community and the generic pharmaceutical industry and thereby acted in willful and wanton disregard of the rights of persons similarly situated, and this conduct caused serious injury to the Plaintiff.

85.

Defendant Pliva chose to rely on Defendant Wyeth and its predecessors-in-interest, to keep abreast of current medical literature concerning Reglan, metoclopramide HCI and/or metoclopramide and to inform them concerning its knowledge of how physicians were using Reglan, metoclopramide HCI and/or metoclopramide and any dangers that were associated with that use, by properly reporting their knowledge to the FDA

despite the fact that PLIVA knew, or should have known that Wyeth and its predecessors-in-interest had a history of failing to adequately warn physicians about other dangerous products.

86.

Defendant PLIVA failed to exercise reasonable care to independently monitor their sales of metoclopramide and the medical literature, which would have alerted them to the fact that Reglan, metoclopramide HCl and/or metoclopramide was widely over prescribed as a result of inadequate warnings in the package inserts and PDR monograhs for Reglan brand and generic metoclopramide.

87.

Defendant PLIVA also knew, or should have known in the exercise of reasonable care that the package insert for Reglan, metoclopramide HCl and/or metoclopramide substantially understated the prevalence of acute dystonic reactions and other acute side effects of Reglan, metoclopramide HCl and/or metoclopramide and failed to use reasonable care to modify the package insert, and/or seek FDA approval to modify the package insert in order to adequately warn physicians and consumers.

88.

As successor-in-interest to Pliva, Defendant Barr Pharmaceuticals is legally responsible for the actions, representations and warranties of Pliva, Inc., concerning the safety and adequacy of Reglan, metoclopramide HCI and/or metoclopramide.

89.

As a result of the misrepresentations, breach of express and implied warranties and negligence occasioned by the DRUG COMPANY DEFENDANTS, Plaintiff was prescribed excessive amounts of Reglan, metoclopramide HCI and/or metoclopramide which caused Plaintiff to suffer serious and permanent injuries as described above.

90.

As a result of the foregoing acts and omissions, Plaintiff requires and will continue to require health care and services, and has incurred and will continue to incur medical, rehabilitative, and related expenses. Plaintiff has suffered and will continue to suffer indirect costs, including diminished quality of life and direct medical costs for follow-up care, including hospitalizations, and other medical care.

## COUNT I – STRICT LIABILITY

### 91.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

### 92.

At all relevant times the DRUG COMPANY DEFENDANTS were engaged in the business of manufacturing, designing, testing, marketing, promoting, distributing, and/or selling Reglan, metoclopramide HCI, and/or metoclopramide.

### 93.

At all times mentioned in this Complaint, Reglan was defective and/or unreasonably dangerous to Plaintiff and other foreseeable users at the time it left the control of the DRUG COMPANY DEFENDANTS.

### 94.

Reglan was defective and unreasonably dangerous when the product initially was patented, and subsequently when it was promoted and entered into the stream of commerce and received by Plaintiff, in one or more of the following respects:

(a)   At the time Reglan left the control of the DRUG COMPANY DEFENDANTS it was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because the product breached an express warranty or failed to conform to other expressed factual representations upon which Plaintiff's physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiff seeks recovery herein.

(b)   Reglan was not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time the product left the possession of the DRUG COMPANY DEFENDANTS, and that such risks clearly outweighed the utility of the product or its therapeutic benefits.

(c)   At the time Reglan left the control of the DRUG COMPANY DEFENDANTS it possessed a dangerous characteristic that may cause damage and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time the product left the possession

of the DRUG COMPANY DEFENDANTS.   Specifically, although the DRUG COMPANY DEFENDANTS were well aware that metoclopramide could potentially cause central nervous system side effects, depression with suicidal ideation, akathisia, akinesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with the metabolism of other prescription drugs and in fact, had significantly greater prevalence and severity of these side effects in patients with diabetes mellitus, warnings of such adverse health conditions were either not included on the package insert for these products or they were not adequate to inform reasonably prudent physicians and consumers.   The DRUG COMPANY DEFENDANTS failed to use reasonable care to provide an adequate warning of these dangerous characteristics to handlers and users of metoclopramide.

(d)   The DRUG COMPANY DEFENDANTS' warnings or instructions were not of a nature that a reasonable prudent drug company in the same or similar circumstances would have provided with respect to the danger.   There were no warnings or instructions that communicate sufficient information on the

dangers and safe use of the product taking into account the characteristics of the product, and/or the ordinary knowledge common to the physician who prescribes and the consumer who purchases the product, such as the Plaintiff.

(e)   The Reglan manufactured and supplied by the DRUG COMPANY DEFENDANTS was further defective due to inadequate post-marketing warning or instruction because, after the DRUG COMPANY DEFENDANTS knew or should have known of the risks of injury from Metoclopramide associated with long term use as commonly prescribed, they failed to promptly respond to and adequately warn about extrapyramidal side effects, among other adverse reactions.

95.

The DRUG COMPANY DEFENDANTS knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which Plaintiff seeks recovery.   A reasonably competent physician who prescribed metoclopramide and a reasonably competent Plaintiff who consumed metoclopramide would not realize its dangerous condition.

96.

The DRUG COMPANY DEFENDANTS knew or in light of reasonably available scientific knowledge should have known about the danger associated with use of metoclopramide that caused the damages for which Plaintiff seeks recovery.

97.

The reasonably foreseeable use of Reglan, metoclopramide HCI, and/or metoclopramide, that is ingestion as treatment for nausea on a long term basis, involved substantial danger not readily recognizable by the ordinary physician who prescribed metoclopramide or the patient, like Plaintiff, who consumed Reglan, metoclopramide HCI and/or metoclopramide.

98.

The DRUG COMPANY DEFENDANTS knew that Reglan was to be prescribed by physicians and used by consumers without inspection for defects in the product or in any of its components or ingredients and that Reglan was not properly prepared nor accompanied by adequate warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

99.

Plaintiff and Plaintiff's physicians did not know, nor had reason to know, at the time of the use of Reglan or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

100.

These defects caused serious injuries to Plaintiff when the product was used in its intended and foreseeable manner, and in the manner recommended by the DRUG COMPANY DEFENDANTS or in a non-intended manner that was reasonably foreseeable.

## COUNT II – NEGLIGENCE

101.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

102.

At all times mentioned in this Complaint, the DRUG COMPANY DEFENDANTS had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings, and prepare for use and sell Reglan.

103.

The DRUG COMPANY DEFENDANTS knew or should have known that use of Reglan created an unreasonable risk as a result of its design, testing, and/or manufacturing, including an unreasonable risk of central nervous system side effects, depression, akathisia, akinesia, Tardive Dyskinesia, Tardive Dystonia, visual disturbances and/or interference with drug metabolism, especially in female patients diagnosed with diabetes mellitus and more particular in patients who are poor metabolizers of metoclopramide.

104.

The DRUG COMPANY DEFENDANTS were negligent, and breached duties owed to Plaintiff with respect to metoclopramide in one or more of the following respects:

(a)   Despite knowledge of hazards and knowledge that the product was frequently prescribed for long term use, they failed to accompany the product with adequate warnings and instructions regarding the adverse and long lasting side effects associated with the use of metoclopramide and particularly with foreseeable long term use;

(b)   The failed to conduct adequate testing;

(c)   Despite knowledge of hazards, they failed to conduct adequate post-marketing surveillance to determine the safety of the product;

(d)   Despite knowledge of hazards, they failed to adequately warn Plaintiff's physicians or Plaintiff that the use of metoclopramide could result in depression with suicidal ideation, akathisia, akinesia, Tardive Dyskinesia, Tardive Dystonia, visual disturbances and interferences with drug metabolism; and

(e)   Despite the fact that the DRUG COMPANY DEFENDANTS knew or should have known that metoclopramide caused unreasonably dangerous side effects, they failed to adequately disclose the known or knowable risks associated with metoclopramide as set forth above; they willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of Plaintiff's safety or welfare.

105.

As a result of the negligence of the DRUG COMPANY DEFENDANTS and their willful and wanton misconduct, metoclopramide was prescribed to Plaintiff for long term use and was used long term by

Plaintiff, thereby causing Plaintiff to sustain reasonably foreseeable serious and permanent damages and injuries as alleged in this Complaint.

### 106.

The negligence and the willful and wanton misconduct of the DRUG COMPANY DEFENDANTS was a proximate cause of Plaintiff's harm and injuries that Plaintiff has suffered and will continue to suffer as previously described.

## COUNT III – FRAUDULENT MISREPRESENTATION

### 107.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

### 108.

As set forth generally and specifically above, Wyeth and its predecessors falsely and fraudulently represented to Plaintiff's physicians and through them to Plaintiff and members of the general public that Reglan, metoclopramide HCI, and/or metoclopramide was safe for use to treat gastritis/gastro esophageal reflux and that central nervous system side effects and extrapyramidal symptoms were comparatively rare. These representations were, in fact, false. The true facts were that Reglan,

metoclopramide HCI and/or metoclopramide was not safe for that purpose and was, in fact, dangerous to the health and body of Plaintiff.

109.

Wyeth and its predecessors made other representations about the safety and efficacy of Reglan, metoclopramide HCI and/or metoclopramide, and its minimal side effects all as set forth above and incorporated herein by reference.

110.

These representations were in fact, false.  The true facts were that Reglan, metoclopramide HCI and/or metoclopramide causes central nervous system side effects, and extrapyramidal symptoms, among other side effects, far more frequently than represented, and Wyeth and its predecessors did not disclose or warn physicians about the actual prevalence of known side effects of Reglan, metoclopramide HCI and/or metoclopramide, particularly when Reglan, metoclopramide HCI and/or metoclopramide is used on along term basis or when used in patients who are poor metabolizers of metoclopramide, all of which were foreseeable.

111.

Wyeth and its predecessors misrepresented the safety of Reglan, metoclopramide HCI, and/or metoclopramide and withheld warnings of the

known side effects of Reglan, metoclopramide HCl and/or metoclopramide when used as commonly prescribed by physicians as specifically required by 21 CFR 201.128.

112.

When Wyeth and its predecessors made these representations, they knew that they were false.

113.

Wyeth made these representations with the intent to defraud and deceive Plaintiff's physicians and through them to defraud and deceive Plaintiff and with the intent to induce her and her physicians to act in the manner alleged in this Complaint; that is to use Reglan, metoclopramide HCl and/or metoclopramide as pharmaceutical treatment for gastritis/gastro esophageal reflux for a period of time that far exceeded the FDA's approved indicated duration of use.

114.

At the time Wyeth and its predecessors made the above described representations and at the time Plaintiff and Plaintiff's physician took the actions alleged in this Complaint, Plaintiff and Plaintiff's physicians were ignorant of the falsity of the representations and reasonably believed them to be true.

115.

In reliance upon the representations, Plaintiff's physicians were induced to and did prescribe Reglan, metoclopramide HCI and/or metoclopramide as described in this Complaint and Plaintiff was induced to and did use Reglan, metoclopramide HCI, and/or metoclopramide as described in this Complaint.

116.

If Plaintiff's physicians had known the actual facts they would not have prescribed Reglan, metoclopramide HCI, and/or metoclopramide in the manner that they prescribed it and Plaintiff would not have taken Reglan, metoclopramide HCI and/or metoclopramide in the way that it was prescribed.

117.

The reliance of Plaintiff and her physicians upon the representations of Wyeth and its predecessors was justified because the representations were made by individuals and entities that appeared to be in the position to know the true facts.

118.

As a proximate result of the fraud and deceit of Wyeth and its predecessors, Plaintiff sustained the injuries and damages described in this Complaint.

119.

In doing the acts alleged in this Complaint, Wyeth and its predecessors acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages to deter Wyeth and others from engaging in similar conduct in the future. This wrongful conduct was done with the advance knowledge, authorization, or ratification of an officer, director, or managing agent of each of Wyeth and its predecessors.

## COUNT IV – NEGLIGENT MISREPRESENTATION
### (As against Defendants WYETH and SCHWARZ)

120.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

121.

Wyeth and Schwarz had actual knowledge of facts which demonstrated that representations in the Reglan package insert the PDR monograph for Reglan and literature that they distributed concerning Reglan, metoclopramide HCI and/or metoclopramide to physicians were false and misleading.

122.

Wyeth and Schwarz had an absolute duty to disclose the true facts regarding the safety of Reglan to physicians and their patients, pharmacists, and the generic metoclopramide industry, which they negligently failed to do. Furthermore, Wyeth and Schwarz had a duty to ensure that they had a reasonable basis for making the representations described above, to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations, all of which they negligently failed to do.

123.

Important information regarding Reglan, metoclopramide HCI and/or metoclopramide's risks was in the exclusive control of Wyeth and Schwarz and was exclusively known by them.  As part of their business and in the furtherance of their own interest, Wyeth and Schwarz disseminated information regarding Reglan, metoclopramide HCI and/or metoclopramide to physicians and their patients, pharmacists and the generic metoclopramide industry and id so knowing that the safety of Reglan, metoclopramide HCI and/or metoclopramide users depended on the accuracy of that information.

124.

Wyeth and Schwarz knew and expected that recipients of that information would rely on it, that they would take action based upon it, that individuals would be put in peril by such action and that those individuals would suffer physical harm as a result.

125.

Wyeth and Schwarz expressly and/or impliedly represented to Plaintiff, Plaintiff's physicians, pharmacists, the generic metoclopramide industry and members of the general public that Reglan, metoclopramide HCl, and/or metoclopramide was safe for use to treat nausea and/or esophageal reflux for durations of use that exceeded the 12 week duration indicated in Wyeth's and Schwarz's package inserts and in the PDR.

126.

The representations by Wyeth and Schwarz and the lack of them were in fact, false.

127.

The true facts were that Reglan, metoclopramide HCl and/or metoclopramide was not safe for use in the manner in which it was prescribed and was, in fact, dangerous to the health and body of Plaintiff.

128.

Wyeth and Schwarz made the above described representations with no reasonable grounds for believing them to be true. Wyeth and Schwarz did not have accurate or sufficient information concerning these representations and they failed to exercise reasonable care both in ascertaining the accuracy of the information contained in those representations and in communicating the information. Further, Wyeth and Schwarz were aware that without such information they could not accurately make the above described representations.

129.

The above misrepresentations or omissions were made to Plaintiff, Plaintiff's physicians, pharmacists, the generic pharmaceutical industry and the general public, all of whom justifiably and foreseeably relied on those representations or omissions.

130.

Plaintiff would not have suffered injuries but for the above misrepresentations or omissions.

131.

Wyeth's and Schwarz's misrepresentations or omissions were a cause in fact and a proximate cause of Plaintiff's injuries and damages.

## COUNT V – FRAUDULENT CONCEALMENT
### (As against Defendant WYETH)

132.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

133.

At all times mentioned in this complaint, Wyeth and its predecessors had the duty and obligation to disclose to Plaintiff and to Plaintiff's physicians the true facts concerning Reglan/metoclopramide, that is, that Reglan, metoclopramide HCI, and/or metoclopramide was dangerous and defective and how likely it was to cause serious consequences to users, including injuries as described in this Complaint, and the true level of risk involved in prescribing Reglan, metoclopramide HCI, and/or metoclopramide for the purposes indicated.

134.

Wyeth and its predecessors made the affirmative representations set forth above to Plaintiff, her/his prescribing physicians, and the general public prior to the day Plaintiff was first prescribed and used Reglan, metoclopramide HSI, or metoclopramide while concealing the material facts set forth below.

135.

At all times mentioned in this complaint, Wyeth and its predecessors had the duty and obligation to disclose to Plaintiff and to Plaintiff's physicians the true facts concerning Reglan, metoclopramide HCI, and/or metoclopramide that is that long term use and exposure could cause central nervous system side effects, depression with suicidal ideation, akathisia, akinesia tardive dyskinesia and tardive dystonia.  At all times mentioned in this Complaint, Wyeth and its predecessors intentionally, willfully and maliciously concealed or suppressed the facts set forth above from Plaintiff's physicians, and therefore from Plaintiff, with the intent to defraud as alleged in this Complaint.

136.

At all times mentioned in this Complaint, neither Plaintiff nor Plaintiff's physicians were aware of the facts set forth above.  Had they been

aware of those facts, they would not have acted as they did, that is, would not have utilized Reglan, metoclopramide HCI, and/or metoclopramide in the treatment of Plaintiff's condition.

### 137.

As a proximate result of the concealment or suppression of the facts set forth above, Plaintiff was prescribed and took Reglan, metoclopramide HCI and/or metoclopramide and subsequently became ill, thereby sustaining the injuries and damages as set forth in this Complaint.

## COUNT VI – BREACH OF IMPLIED WARRANTIES

### 138.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

### 139.

The DRUG COMPANY DEFENDANTS knew that most physicians who prescribed Reglan, metoclopramide HCI and/or metoclopramide were not aware the drug is a dopamine antagonist and/or a neuroleptic agent, which is just as likely to cause serious extrapyramidal side effects as other dopamine antagonists and/or other neuroleptic drugs.   The DRUG COMPANY

DEFENDANTS also knew that the risks of potentially irreversible neurological side effects when Reglan, metoclopramide HCI, and/or metoclopramide is used long term were much greater than most physicians realized.

140.

By failing to give adequate warnings about the dopamine antagonist and/or neuroleptic properties of Reglan, metoclopramide HCI, and/or metoclopramide and the risk of long term use that is associated with those properties, the DRUG COMPANY DEFENDANTS breached implied warranties of merchantability and fitness for the ordinary use of Reglan, metoclopramide HCI and/or metoclopramide.

141.

At all times mentioned in this complaint, the DRUG COMPANY DEFENDANTS manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Reglan, metoclopramide and metoclopramide HCI and prior to the time it was used by Plaintiff, the DRUG COMPANY DEFENDANTS impliedly warranted to Plaintiff and to Plaintiff's physicians that the product was of merchantable quality and safe and fit for the use for which it was intended.

142.

Plaintiff relied on the skill and judgment of the DRUG COMPANY DEFENDANTS in using Reglan, metoclopramide and metoclopramide HCI.

143.

Reglan, metoclopramide and metoclopramide HCI was unsafe and unfit for its intended use, nor was it of merchantable quality, as warranted by the DRUG COMPANY DEFENDANTS, in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. Reglan, metoclopramide and metoclopramide HCI was not properly prepared not accompanied by adequate warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. As a result, Reglan, metoclopramide and metoclopramide HCI proximately caused Plaintiff to sustain damages and injuries as alleged in this Complaint by virtue of causing Plaintiff's illness.

144.

After Plaintiff was made aware of Plaintiff's injuries as a result of ingesting Reglan, metoclopramide, and/or metoclopramide HCI, notice was duly given to the DRUG COMPANY DEFENDANTS of the breach of the above described warranties.

## COUNT VII – BREACH OF EXPRESS WARRANTIES

145.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

146.

The DRUG COMPANY DEFENDANTS expressly warranted to Plaintiff (in the package inserts, the Physicians' Desk Reference, other marketing literature and documents provided to the FDA) that Reglan, metoclopramide, and/or metoclopramide HCI, was of merchantable quality, fit, safe and otherwise not injurious to the health and well-being of Plaintiff and capable of providing the appropriate therapy to Plaintiff.

147.

The DRUG COMPANY DEFENDANTS' representations were material reasons why Plaintiff was prescribed, purchased, and took the medication.

148.

However, Reglan, metoclopramide, and/or metoclopramide HCI, is unsafe, unmerchantable, and unfit for its intended use, actually increases the risk of injury, and has otherwise caused bodily injury, expense, and economic loss to Plaintiff.

149.

The DRUG COMPANY DEFENDANTS are merchants in the sale of the drug Reglan, metoclopramide, and/or metoclopramide HCI.

150.

The DRUG COMPANY DEFENDANTS breached express warranties of merchantability in their sale of the medication because the drug is not fit for its intended purposes.

151.

As a direct and proximate result of THE DRUG COMPANY DEFENDANTS' breach of their express warranties, Plaintiff suffered and will continue to suffer personal and bodily injury, expense, and economic loss, having purchased and taken Reglan, metoclopramide, and/or metoclopramide HCI which increased Plaintiff's risk of injury and, in fact, injured Plaintiff.

## COUNT VIII – JOINT AND SEVERAL LIABILITY

152.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

153.

By virtue of their individual and collective acts and omissions, Defendants are jointly and severally liable to Plaintiff as such acts and omissions have proximately caused Plaintiff to suffer a single indivisible injury for which each Defendant is responsible.

## COUNT IX – PLAINTIFF'S DAMAGES

154.

Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

155.

As a direct and proximate result of the aforesaid acts of and/or omissions by the Defendants, Plaintiff has, among other things:

(a)     suffered severe and permanent injuries which Plaintiff will be forced to endure into the future;

(b)     suffered physical impairment and disfigurement;

(c)     suffered physical pain and suffering;

(d)     suffered mental pain and suffering;

(e)     had Plaintiff's enjoyment of life severely impaired;

(f)     incurred and will continue to incur various sums of money for

past, present and future medical expenses associated with

monitoring and treating Plaintiff's injuries; and

(g)     incurred attorney's fees and expenses of litigation related to this

action.

Plaintiff is entitled to recover an award for the injuries caused by the

Defendants.

## COUNT X – PUNITIVE DAMAGES

### 156.

Plaintiff repeats and incorporates by reference each and every

paragraph of this Complaint as though set forth in full in this cause of action.

### 157.

The conduct of each Defendant, as set forth herein above was

intentional, willful, wanton, oppressive, malicious, and reckless, evidencing

such an entire want of care as to raise the presumption of a conscious

indifference to the consequences in that each Defendant acted only out of self

interest and personal gain.  Such conduct evidences a specific intent to cause

harm to Plaintiff.

158.

Accordingly, punitive damages should be imposed against each Defendant, to punish and deter each Defendant from repeating or continuing such unlawful conduct.

## COUNT XI – EXEMPLARY DAMAGES

159.

Plaintiff repeats and incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

160.

The DRUG COMPANY DEFENDANTS actions evidence an entire want of care and conscious disregard for the consequences and that the DRUG COMPANY DEFENDANTS acted with a specific intent to cause harm, such that Plaintiff is entitled to recover exemplary damages from the DRUG COMPANY DEFENDANTS to deter further acts of wrongdoing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the DRUG COMPANY DEFENDANTS, jointly and severally, as follows:

(a)    That process issue according to law;

(b)    That each Defendant be served with a copy of Plaintiff's Complaint and show cause why the prayers for relief requested by Plaintiff herein should not be granted;

(c)    That Plaintiff be granted a trial by jury in this matter;

(d)    That the Court enter a judgment against each Defendant, jointly and severally, for all general and compensatory damages allowable to Plaintiff;

(e)    That the Court enter a judgment against each Defendant, jointly and severally, for all special damages allowable to Plaintiff;

(f)    That the Court enter a judgment against each Defendant serving to award Plaintiff punitive damages;

(g)    That the Court enter a judgment against each Defendant, jointly and severally, for all other relief sought by Plaintiff under this Complaint;

(h)    That the costs of this action be cast upon Defendants; and

(i)     That the Court grant Plaintiff such further relief which the Court

deems just and appropriate.

Respectfully submitted this 8th day of December, 2010.

WEINSTOCK & SCAVO, P.C.

By: _____

Michael Weinstock, Esq.
Georgia Bar No. 746454
mweinstock@wslaw.net
Jan P. Cohen, Esq.
Georgia Bar No. 174337
jcohen@wslaw.net
Michael S. Love, Esq.
Georgia Bar No. 141973
mlove@wslaw.net

***Attorneys for Plaintiff***
3405 Piedmont Road NE
Suite 300
Atlanta, Georgia 30305
P: (404) 231-3999
F: (404) 231-161

## CERTIFICATE OF COMPLIANCE

Pursuant to the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, this is to certify that the foregoing *PLAINTIFF'S COMPLAINT* complies with the font and point selections approved by the Court in Local Rule 5.1C. The foregoing was prepared on computer using Times New Roman font (14 point).

Respectfully submitted this 8th day of December, 2010.

WEINSTOCK & SCAVO, P.C.

By: _____

Michael Weinstock, Esq.
Georgia Bar No. 746454
mweinstock@wslaw.net
Jan P. Cohen, Esq.
Georgia Bar No. 174337
jcohen@wslaw.net
Michael S. Love, Esq.
Georgia Bar No. 141973
mlove@wslaw.net

*Attorneys for Plaintiff*
3405 Piedmont Road NE
Suite 300
Atlanta, Georgia 30305
P: (404) 231-3999
F: (404) 231-161